Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Michael J. Ellis
Stephanie A. Van Marter
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**Dec 07, 2022**

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:22-CR-02034-SAB |
| Plaintiff, | Plea Agreement |
| v. | Fed. R. Crim. P. 11(c)(1)(C) |
| JONATHAN RIVERA-VENEGAS, | |
| Defendant. | |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Michael J. Ellis, Assistant United States Attorney for the Eastern District of Washington, and Defendant Jonathan Rivera-Venegas ("Defendant"), both individually and by and through Defendant's counsel, Robin C. Emmans and Ulvar W. Klein, agree to the following Plea Agreement.

1.    <u>Guilty Plea and Maximum Statutory Penalties</u>

Defendant agrees to enter a plea of guilty to Count 1 of the Indictment filed on April 5, 2022, which charges Defendant with Conspiracy to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846, a Class C felony.

Defendant understands that the following potential penalties apply:

a.    a term of imprisonment of not more than 20 years;

PLEA AGREEMENT - 1

b.    a term of supervised release of not less than 3 years up to life;

c.    a fine of up to $1,000,000; and

d.    a $100 special penalty assessment.

2.    <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.    <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.    sentencing is a matter solely within the discretion of the Court;

b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

PLEA AGREEMENT - 2

c.   the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.   the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties; and

e.   the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances.

4.   <u>Rule 11 Nature of the Plea Agreement</u>

Defendant acknowledges that this Plea Agreement is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)"). Pursuant to Rule 11(c)(1)(C), the United States and Defendant agree that the appropriate disposition of the case is a sentence between 120 months and 204 months. The United States and Defendant agree to make a sentencing recommendation within the above range to the Court. Although the United States and Defendant agree to make these recommendations to the Court pursuant to Rule 11(c)(1)(C), Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will ultimately impose.

Defendant understands that Defendant may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of greater than 204 months or indicates its intent to do so. Defendant also understands that the United States may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of less than 120 months or indicates its intent to do so.

The United States and Defendant acknowledge that the imposition of any fine, restitution, or term or conditions of Supervised Release are not part of the Rule 11(c)(1)(C) nature of this Plea Agreement; that the United States and Defendant are free to make any recommendations they deem appropriate as to the imposition of fines, restitution, or term or conditions of Supervised Release; and that the Court will exercise its discretion in this regard. The United States and

PLEA AGREEMENT - 3

Defendant acknowledge that the Court's decisions regarding the imposition of fines, restitution, or term or conditions of Supervised Release will not provide bases for Defendant to withdraw Defendant's guilty plea or withdraw from this Rule 11(c)(1)(C) Plea Agreement.

Defendant acknowledges that if either the United States or Defendant successfully withdraws from this Plea Agreement, the Plea Agreement becomes a nullity, and the United States is no longer bound by any representations within it.

5.    <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

    a.    pleading guilty in this case may have immigration consequences;

    b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

    c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

6.    <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

    a.    the right to a jury trial;

PLEA AGREEMENT - 4

b.      the right to see, hear and question the witnesses;

c.      the right to remain silent at trial;

d.      the right to testify at trial; and

e.      the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7.      Denial of Federal Benefits

Defendant understands that by entering this plea of guilty, Defendant is no longer eligible for assistance under any state program funded under part A of Title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

8.      Elements of the Offense

The United States and Defendant agree that in order to convict Defendant of Conspiracy to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846, the United States would have to prove the following beyond a reasonable doubt.

a.      *First*, beginning on a date unknown, but by on or about June 5, 2021, and continuing until on or about August 17, 2021, in the

PLEA AGREEMENT - 5

Eastern District of Washington, Defendant entered into an agreement with one or more persons to commit the crime of distribution of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethy)-4-piperidiny]propanamide (a/k/a "fentanyl"); and

b.    *Second*, Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

9.    Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

**August 7, 2021, Death of S.F.**

On August 7, 2021, at 1808 hours, officers with the Ellensburg Police Department responded to an apartment in Ellensburg, Washington. A resident had called 911 to report that her roommate was passed out in the shower behind a locked door. The first officer to arrive observed a human body through a crack in the door, then kicked the door down to reveal a male, later identified as S.F., lying naked in between the toilet and the bathtub. S.F. was pronounced deceased at the scene. When removing S.F. from the bathroom, officers observed aluminum foil with burnt residue, a homemade pipe, and a lighter lying on the floor by the toilet. After law enforcement left the residence, S.F.'s roommate contacted a detective and alerted him that she had found a small round blue container which contained

some blue pills on the bathroom countertop. The container was recovered and found to contain two blue pills with a "30" imprinted on one side and an "M" on the other. One of the two pills was later tested and found to contain fentanyl.

S.F.'s autopsy was conducted which revealed that his blood contained, among other substances, 19 ng/mL of fentanyl. After reviewing the case, Dr. Stacey Hail, a forensic toxicologist, opined that S.F. would not have died but for the fentanyl present in his system on August 7, 2021.

S.F. had been contacted during a traffic stop earlier in the day on August 7, 2021. Officers located the two individuals who had been observed with S.F. – W.B. and S.A. When interviewed, W.B. informed officers that he went with S.F. to "Speedy's" house. W.B. stated that S.F. entered "Speedy's" trailer and returned with small blue round pills. When interviewed, S.A. confirmed that she had been present with S.F. and W.B. and that she drove S.F. and W.B. to buy some "blues," which S.A. understood to be Percocet pills. S.A. stated she drove S.F. to a trailer where a young Hispanic male entered the back of her vehicle. S.F. then purchased three "blues" from the male. S.A. identified both "Speedy's" trailer and a photograph of "Speedy." Through prior contacts, officers were aware that "Speedy" was a moniker associated with Defendant. Officers were also aware that Defendant lived at the trailer identified by S.A. Defendant was the individual in the photograph S.A. identified as "Speedy."

S.F.'s phone was examined and found to contain the following conversation on August 7, 2021, between 1331 and 1407 hours between S.F. and an Instagram account named "SP33DY R1V3RA":

> "SP33DY R1V3RA": "Yoo g when's the viewing for FlaCKo g" (13:31:31 hours)
>
> S.F.: "It was supposed to be today but his family cut COVID so I think a few weeks" (13:31:49 hours)
>
> S.F.: (Audio call to "SP33DY R1V3RA") (13:32:02 hours)
>
> S.F.: (Audio call to "SP33DY R1V3RA" ends) (13:33:09 hours)

"SP33DY R1V3RA": "Fosho g lmk I'm tryna go boss" (13:42:11 hours)

S.F.: "I'm comin rn" (13:50:35 hours)

"SP33DY R1V3RA": "You know any people that will buy blues my homie said he'll give me a roll to push" (13:53:14 hours)

"SP33DY R1V3RA": "If I can get rid of them" (13:53:28 hours)

S.F.: "Yes if you get blues I know Hella people that will buy them as long as he charge 15 to 20 no one wants to pay 25 anymore" (13:53:54 hours)

"SP33DY R1V3RA": "My homies on his way I said I can try" (13:54:10 hours)

"SP33DY R1V3RA": "Fosho" (13:54:22 hours)

S.F.: "I'm on my way to pick up those three right now" (13:54:37 hours)

S.F.: "When I get more I will get more" (13:54:56 hours)

"SP33DY R1V3RA": "Simon" (13:55:19 hours)

"SP33DY R1V3RA": "My homey has a boat and he said he's gonna drop me off 100 to make some money" (13:56:10 hours)

S.F.: "Bet I'll help you get them off" (14:03:40 hours)

S.F.: (Audio call to "SP33DY R1V3RA") (14:03:41 hours)

S.F.: (Audio call to "SP33DY R1V3RA" ends) (14:04:12 hours)

S.F.: (Audio call to "SP33DY R1V3RA") (14:06:27 hours)

S.F.: (Audio call to "SP33DY R1V3RA" ends) (14:07:08 hours).

The detective confirmed with Instagram that the "SP33DY R1V3RA" account was associated through subscriber information with Defendant's name, date of birth, and address.

Officers also executed a search warrant on Defendant's CashApp account, "speedy1613." CashApp confirmed that the "speedy1613" account was associated through subscriber information with Defendant's name, date of birth, and social security number. A detective observed that on August 7, 2021, an account bearing S.F.'s name paid Defendant $20 through CashApp.

//

## August 16, 2021, Death of M. Q.-C.

On August 16, 2021, at 0749 hours, officers from the Ellensburg Police Department responded to a CPR in progress call at a residence in Ellensburg, Washington. Upon arrival, an officer observed a young male, later identified as sixteen-year-old M. Q.-C., laying hunched over in bed. M. Q.-C. was subsequently pronounced deceased. M. Q.-C.'s room was searched and a folded piece of aluminum foil was found under M. Q.-C.'s pillow. A detective observed that the foil had black track marks consistent with heating up a substance for inhalation. The detective also found a lighter in the pocket of M. Q.-C.'s shorts.

M. Q.-C.'s autopsy was conducted which revealed that his blood contained 8.5 ng/mL of fentanyl. After reviewing the case, Dr. Stacey Hail, a forensic toxicologist, opined that M. Q.-C. would not have died but for the fentanyl present in his system on August 16, 2021.

M. Q.-C.'s parents relayed that M. Q.-C. had been working at a local diner the night before and was supposed to be off work at around 2100 hours. M. Q.-C. did not arrive home under around 2230 hours. M. Q.-C. had stated that he had stayed later to finish some extra work.

Detectives contacted M. Q.-C.'s girlfriend who stated that M. Q.-C. had come over to her house on August 15, 2021, shortly after 2000 hours. The girlfriend stated that M. Q.-C. told her he had bought one Percocet pill from a guy named "Jonathan" who goes by "Speedy" about two hours before meeting up with her. The girlfriend relayed that M. Q.-C. stated that the pill costs $35 and that he had bought pills from the same person a few times in the past.

Officers reviewed M. Q.-C.'s cell phone, which revealed a message sent to a contact named "Speedy" on August 15, 2021, at 1841 hours while M. Q.-C. was at work at the diner. A detective retrieved surveillance footage from the diner which showed M. Q.-C. taking the garbage out at that time and, per the manager, taking

longer than normal to return inside the diner. The diner's records revealed that M. Q.-C. had clocked out of work at 2003 hours.

After Defendant was arrested, Defendant's phone was searched and found to contain the following conversation between Defendant and M. Q.-C. on August 15, 2021:

Defendant: "Yuh" (18:41 hours)

M. Q.-C.: "If u do can I pull up in like 30 mins or so" (18:42 hours)

M. Q.-C.: "Im off inna bit" (18:42 hours)

Defendant: "OK" (18:52 hours)

Defendant: "?" (19:54 hours)

M. Q.-C.: "Im onw bro sorry" (20:05 hours)

M. Q.-C.: "There was a bigger ass rush" (20:05 hours)

M. Q.-C.: "Im hella close to ur crib bro" (20:23 hours)

M. Q.-C.: "Can I still pull up?" (20:23 hours)

M. Q.-C.: "Ok" (20:27 hours)

Defendant: "Do U got cash" (20:27 hours)

Defendant: "This is my last one so" (20:29 hours)

Defendant: "I you don't got cash I ain't gonna sell it" (20:29 hours)

M. Q.-C.: "Yeah but u got change of a 50?" (20:30 hours)

M. Q.-C.: "It no ill go change it" (20:32 hours)

Defendant:  "I got a $20" (20:32 hours)

Defendant: "This my last one so ima have to do 30" (20:32 hours)

M. Q.-C.: "Ightt bet pues," (20:33 hours)

Defendant: "Way" (20:33 hours)

Defendant: "Can y hurry ima lay down" (20:33 hours)

Defendant: "Wey" (20:33 hours)

M. Q.-C.: "Im outside" (20:34 hours)

PLEA AGREEMENT - 10

1  Defendant's phone also revealed that Defendant and M. Q.-C. had
2  exchanged text messages on other occasions discussing M. Q.-C. purchasing
3  "blues" from Defendant.

### October 4, 2021, Arrest of Defendant

5  After law enforcement obtained a Kittitas County, Washington, Superior
6  Court arrest warrant for Defendant, a detective located Defendant in Hawaii.
7  Defendant was arrested on October 4, 2021. Defendant's cell phone was seized
8  and, when searched, found to contain text messages where Defendant was
9  discussing selling "blues" with other persons dating to June 5, 2021. The phone
10  also revealed that Defendant had purchased his plane ticket to Hawaii on
11  August 17, 2021 – the day after M. Q.-C. was found deceased in his bedroom.

12  Defendant admits, in the Eastern District of Washington, he entered into an
13  agreement with one or more persons to distribute pills containing fentanyl.
14  Defendant admits that he distributed three fentanyl laced pills to S.F. on August 7,
15  2021, and that S.F. died from a fentanyl overdose following the use of the pills
16  distributed by Defendant. Defendant admits that S.F. would not have died on
17  August 7, 2021, but for the fentanyl distributed by Defendant. Defendant further
18  admits that he distributed a fentanyl laced pill to M. Q.-C. on August 15, 2021, and
19  that M. Q.-C. died from a fentanyl overdose following the use of the pill
20  distributed by Defendant. Defendant admits that M. Q.-C. would not have died
21  during the night between August 15, 2021, and August 16, 2021, but for the
22  fentanyl distributed by Defendant.

23  10.  The United States' Agreements

24  The United States Attorney's Office for the Eastern District of Washington
25  agrees that at the time of sentencing, the United States will move to dismiss
26  Counts 2 & 3 of the Indictment filed on April 5, 2022, which charge Defendant
27  with Distribution of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).

28

PLEA AGREEMENT - 11

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

11.   United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.   Base Offense Level

The United States and Defendant stipulate and agree that, because of Defendant's involvement in the Conspiracy to Distribute Fentanyl, Defendant's actions led to the deaths of two other people – S.F. and M. Q.-C. – resulting from the use of a substance distributed during the conspiracy. Thus, the United States and Defendant agree that the base offense level is thirty-eight (38). U.S.S.G. § 2D1.1(a)(2).

The United States and Defendant agree that a stipulated base offense level of thirty-eight (38) is appropriate in lieu of the United States seeking a Superseding Indictment alleging that Defendant's conduct, and involvement in the Conspiracy to Distribute Fentanyl, caused death or serious injury from the use of a controlled substance distributed during the conspiracy, pursuant to 21 U.S.C. § 841(b)(1)(C). The United States and the Defendant therefore agree this stipulation is for the purpose of establishing a more serious offense than the offense of conviction pursuant to U.S.S.G. § 1B1.2(a).

b.   Specific Offense Characteristics

The United States and Defendant agree to recommend no specific offense characteristics may apply. *See generally* U.S.S.G. § 2D1.1(b). The parties agree

PLEA AGREEMENT - 12

Defendant is not eligible for the "safety valve" as the offense resulted in death. *See* U.S.S.G. § 5C1.2(a)(3); U.S.S.G. § 2D1.1(b)(18).

        c.      Role Adjustments

The United States and Defendant agree to recommend no role adjustment applies. *See* U.S.S.G. § 3B1.1; U.S.S.G. § 3B1.2.

        d.      Acceptance of Responsibility

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

        i.      accepts this Plea Agreement;

        ii.      enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

        iii.      demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

        iv.      provides complete and accurate information during the sentencing process; and

        v.      does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is convicted of any criminal offense or if Defendant tests positive for any controlled substance.

        e.      No Other Agreements

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from

PLEA AGREEMENT - 13

1 Defendant's uncharged conduct, conduct set forth in charges that will be dismissed
2 pursuant to this Agreement, and Defendant's relevant conduct.

3         f.    Criminal History

4     The United States and Defendant have no agreement and make no
5 representations about Defendant's criminal history category, which will be
6 determined by the Court after the United States Probation Office prepares and
7 discloses a Presentence Investigation Report.

8     12.   Incarceration

9     Pursuant to Rule 11(c)(1)(C), Defendant and the United States agree to
10 recommend a total sentence of between 120 months and 204 months incarceration.
11 If the Court does not accept the Plea Agreement or chooses to sentence Defendant
12 to a greater or lesser sentence than the United States and Defendant have agreed
13 upon, the United States and Defendant each may withdraw from the Plea
14 Agreement and this agreement is null and void.

15     13.   Supervised Release

16     The United States and Defendant each agree to recommend five (5) years of
17 supervised release. Defendant agrees that the Court's decision regarding the
18 conditions of Defendant's Supervised Release is final and non-appealable; that is,
19 even if Defendant is unhappy with the conditions of Supervised Release ordered by
20 the Court, that will not be a basis for Defendant to withdraw Defendant's guilty
21 plea, withdraw from this Plea Agreement, or appeal Defendant's conviction,
22 sentence, or any term of Supervised Release.

23     The United States and Defendant agree to recommend that in addition to the
24 standard conditions of supervised release imposed in all cases in this District, the
25 Court should also impose the following conditions:

26         a.    The United States Probation Officer may conduct, upon
27             reasonable suspicion, and with or without notice, a search of
28

        Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control;

    b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs; and

    c.    Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to Defendant's ability.

14.   <u>Criminal Fine</u>

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

15.   <u>Mandatory Special Penalty Assessment</u>

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

16.   <u>Restitution</u>

The United States and Defendant agree that restitution is appropriate and mandatory, without regard to Defendant's economic situation, pursuant to 18 U.S.C. §§ 3663A, 3664, for the offense conduct to which Defendant has pled guilty for all victims, as defined by 18 U.S.C. § 3663A(a)(2), who were directly and proximately harmed by the offense conduct, including any representatives of any victim's estate pursuant. Furthermore, pursuant to 18 U.S.C. § 3663A(a)(3),

PLEA AGREEMENT - 15

Defendant voluntarily agrees to pay restitution for all losses, as defined by 18 U.S.C. § 3663A(b)(2)-(4), caused by Defendant's individual conduct, in exchange for the United States not bringing additional potential charges, regardless of whether counts associated with such losses will be dismissed as part of this Plea Agreement.

With respect to restitution, the United States and Defendant agree to the following:

### a.    Restitution Amount and Interest

The United States and Defendant stipulate and agree that, pursuant to 18 U.S.C. §§ 3663, 3663A and 3664, the Court should order restitution in an amount to be determined at sentencing, and that any interest on this restitution amount, if any, should be waived.

The United States and Defendant stipulate and agree that restitution shall be ordered to S.F., M. Q.-C., any representative of S.F.'s estate, any representative of M. Q.-C.'s estate, and/or any third-party compensating the victims or their estates, including Crime Victim's Compensation. 18 U.S.C. § 3664(j)(1).

### b.    Payments

To the extent restitution is ordered, the United States and Defendant agree that the Court will set a restitution payment schedule based on Defendant's financial circumstances. 18 U.S.C. § 3664(f)(2), (3)(A). Regardless, Defendant agrees to pay not less than 10% of Defendant's net monthly income towards restitution.

### c.    Treasury Offset Program and Collection

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

PLEA AGREEMENT - 16

1    Defendant understands that the United States may, notwithstanding the
2    Court-imposed payment schedule, pursue other avenues to ensure the restitution
3    obligation is satisfied, including, but not limited to, garnishment of available funds,
4    wages, or assets. 18 U.S.C. §§ 3572, 3613, and 3664(m).
5    Nothing in this acknowledgment shall be construed to limit Defendant's
6    ability to assert any specifically identified exemptions as provided by law, except
7    as set forth in this Plea Agreement.
8    Until Defendant's fine and restitution obligations are paid in full, Defendant
9    agrees fully to disclose all assets in which Defendant has any interest or over
10   which Defendant exercises control, directly or indirectly, including those held by a
11   spouse, nominee or third party.
12   Until Defendant's fine and restitution obligations are paid in full, Defendant
13   agrees to provide waivers, consents, or releases requested by the U.S. Attorney's
14   Office to access records to verify the financial information.
15       d.   Notifications and Waivers
16   Defendant agrees to notify the Court and the United States of any material
17   change in Defendant's economic circumstances (e.g., inheritances, monetary gifts,
18   changed employment, or income increases) that might affect Defendant's ability to
19   pay restitution. 18 U.S.C. § 3664(k). Defendant also agrees to notify the United
20   States of any address change within 30 days of that change. 18 U.S.C.
21   § 3612(b)(1)(F). These obligations cease when Defendant's fine and restitution
22   obligations are paid in full.
23   Defendant acknowledges that the Court's decision regarding restitution is
24   final and non-appealable; that is, even if Defendant is unhappy with the amount of
25   restitution ordered by the Court, that will not be a basis for Defendant to withdraw
26   Defendant's guilty plea, withdraw from this Plea Agreement, or appeal
27   Defendant's conviction, sentence, or restitution order.
28   //

PLEA AGREEMENT - 17

17. <u>Payments While Incarcerated</u>

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

18. <u>Additional Violations of Law Can Void Plea Agreement</u>

The United States and Defendant agree that the United States may, at its option and upon written notice to Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is convicted of any criminal offense or tests positive for any controlled substance.

19. <u>Waiver of Appeal Rights</u>

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

In return for the concessions that the United States has made in this Plea Agreement, Defendant agrees to waive Defendant's right to appeal Defendant's conviction and sentence if the Court imposes a term of imprisonment consistent with the terms of this Rule 11(c)(1)(C) Plea Agreement.

If the Court indicates its intent to impose a sentence above the Rule 11(c)(1)(C) terms of this Agreement and Defendant chooses *not* to withdraw, then Defendant: (a) may appeal only Defendant's sentence, but not Defendant's conviction; (b) may appeal Defendant's sentence only if it exceeds the high end of the Guidelines range determined by the Court; and (c) may appeal only the substantive reasonableness of Defendant's sentence.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising

PLEA AGREEMENT - 18

1  from information not now known by Defendant and which, in the exercise of due

2  diligence, Defendant could not know by the time the Court imposes sentence.

3        Nothing in this Plea Agreement shall preclude the United States from

4  opposing any post-conviction motion for a reduction of sentence or other attack

5  upon the conviction or sentence, including, but not limited to, writ of habeas

6  corpus proceedings brought pursuant to 28 U.S.C. § 2255.

7        20.   Compassionate Release

8        In consideration for the benefits Defendant is receiving under the terms of

9  this Plea Agreement, Defendant expressly waives Defendant's right to bring any

10  motion for Compassionate Release other than a motion arising from one of the

11  specific bases set forth in this paragraph of this Plea Agreement. The United States

12  retains the right to oppose, on any basis, any motion Defendant files for

13  Compassionate Release.

14        The only bases on which Defendant may file a motion for Compassionate

15  Release in the Eastern District of Washington are the following:

16           a.   Medical Condition of Defendant

17                i.    Defendant is suffering from a terminal illness (i.e., a

18                     serious and advanced illness with an end of life

19                     trajectory). A specific prognosis of life expectancy (i.e., a

20                     probability of death within a specific time period) is not

21                     required. Examples include metastatic solid-tumor

22                     cancer, amyotrophic lateral sclerosis (ALS), end-stage

23                     organ disease, and advanced dementia; or

24               ii.   Defendant is suffering from a serious physical or medical

25                     condition, a serious functional or cognitive impairment,

26                     or deteriorating physical or mental health because of the

27                     aging process that substantially diminishes the ability of

28                     Defendant to provide self-care within the environment of

PLEA AGREEMENT - 19

a correctional facility and from which Defendant is not
expected to recover.

b.    Age of Defendant

i.    Defendant is at least 65 years old, is experiencing a
serious deterioration in physical or mental health because
of the aging process; and has served at least 10 years or
75 percent of Defendant's term of imprisonment,
whichever is less; or

ii.    Defendant is at least 70 years old and has served at least
30 years in prison pursuant to a sentence imposed under
18 U.S.C. § 3559(c) for the offense or offenses for which
Defendant is imprisoned.

c.    Family Circumstances

i.    The caregiver of Defendant's minor child or children has
died or become incapacitated, and Defendant is the only
available caregiver for Defendant's minor child or
children; or

ii.    Defendant's spouse or registered partner has become
incapacitated, and Defendant is the only available
caregiver for Defendant's spouse or registered partner.

d.    Subsequent Reduction to Mandatory Sentence

i.    Defendant pleaded guilty to an offense which, on the date
of Defendant's guilty plea, carried a mandatory minimum
sentence; and

ii.    after the entry of judgment, the length of the mandatory
minimum sentence for Defendant's offense of conviction
was reduced by a change in the law; and

iii.    the application of the reduced mandatory minimum sentence would result in Defendant receiving a lower overall sentence.

e.    <u>Ineffective Assistance of Counsel</u>

i.    Defendant seeks Compassionate Release based on a claim of ineffective assistance of counsel arising from information that Defendant both

1.    did not know at the time of Defendant's guilty plea, and

2.    could not have known, in the exercise of due diligence, at the time the Court imposed sentence.

21.    <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

a.    this Plea Agreement shall become null and void;

b.    the United States may prosecute Defendant on all available charges;

c.    the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate

PLEA AGREEMENT - 21

1  charges if a count of conviction is withdrawn, set aside, vacated, reversed, or

2  dismissed, including any claim that the United States has violated Double

3  Jeopardy.

4      Defendant agrees not to raise any objections based on the passage of time,

5  including but not limited to, alleged violations of any statutes of limitation or any

6  objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth

7  Amendment.

8      22.  Integration Clause

9      The United States and Defendant acknowledge that this document

10  constitutes the entire Plea Agreement between the United States and Defendant,

11  and no other promises, agreements, or conditions exist between the United States

12  and Defendant concerning the resolution of the case.

13      This Plea Agreement is binding only on the United States Attorney's Office

14  for the Eastern District of Washington, and cannot bind other federal, state, or local

15  authorities.

16      The United States and Defendant agree that this Agreement cannot be

17  modified except in a writing that is signed by the United States and Defendant.

18      Approvals and Signatures

19      Agreed and submitted on behalf of the United States Attorney's Office for

20  the Eastern District of Washington.

21  Vanessa R. Waldref

22  United States Attorney

23

24  _____          12-8-2022

    Michael J. Ellis                                    Date

25  Assistant United States Attorney

26      I have read this Plea Agreement and I have carefully reviewed and discussed

27  every part of this Plea Agreement with my attorney. I understand the terms of this

28  Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and

PLEA AGREEMENT - 22

voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____          12-6-2022
Jonathan Rivera-Venegas                    Date
Defendant

     I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____          12/6/2022
Robin C. Emmans                            Date
Attorney for Defendant

_____          12/6/2022
Ulvar W. Klein                             Date
Attorney for Defendant

PLEA AGREEMENT - 23